UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBIN DARWIN,

                              Plaintiff,

            -against-

NEWBURGH OPERATIONS, LLC, d/b/a
SAPPHIRE NURSING AT MEADOW HILL
and TZVI BARAX, in his individual and
professional capacities,

                              Defendants.

No. 22-CV-0872-LTS

---

<u>MEMORANDUM ORDER</u>

Plaintiff Robin Darwin ("Plaintiff" or "Darwin") brings this action against

Defendants Newburgh Operations, LLC, d/b/a Sapphire Nursing at Meadow Hill ("Sapphire")

and Tzvi Barax ("Barax") (collectively, "Defendants"), asserting causes of action for disability

discrimination, failure to accommodate, and retaliation under the Americans with Disabilities

Act ("ADA") (42 U.S.C. § 12101 <u>et</u> <u>seq.</u>), the New York State Human Rights Law (N.Y. EXEC.

LAW § 290 <u>et</u> <u>seq.</u>), and the New York City Human Rights Law (N.Y.C. ADMIN. CODE § 8-101 <u>et</u>

<u>seq.</u>).  Plaintiff alleges that Sapphire unlawfully terminated her employment and certain benefits

because of her disability and her requests for medical accommodations.  (Docket entry no. 1

("Compl.") ¶¶ 42-49.)  Plaintiff also pleads causes of action against Barax for aiding and abetting

her allegedly discriminatory treatment, and against both Defendants for intentional infliction of

emotional distress.

Defendants move, pursuant to Federal Rule of Civil Procedure 56, for summary

judgment on all claims.  (Docket entry no. 49.)  The Court has jurisdiction of this action pursuant

to 28 U.S.C. sections 1331 and 1343.  The Court has carefully considered the parties'

submissions and arguments.  For the reasons explained below, Defendants' motion for summary

judgment is granted in part and denied in part, and the Court withholds decision on certain aspects of the motion pending supplemental briefing.

<u>BACKGROUND</u>

The following facts are undisputed unless otherwise indicated.[1] Sapphire Nursing is a nursing and care facility that has several locations in the greater New York metropolitan area. (Compl.) Plaintiff was hired for the position of Administrator for Sapphire Nursing at Meadow Hill in early August 2020 (docket entry no. 51 ("Def. 56.1 St.") ¶¶ 3-6) by Jay Pepper, Sapphire's Licensed Nursing Home Administrator and Plaintiff's initial supervisor. (Id. ¶ 4; docket entry no. 53-1 ("Pl. Dep.") at 57.) At some point in the fall of 2020, Barax was hired as Sapphire's Regional Administrator and became Plaintiff's supervisor. (Docket entry no. 53-2 ("Barax Dep.") at 11:10-14; Pl. Dep. at 57.) Defendants proffer deposition testimony that Barax was concerned about Darwin's performance immediately upon meeting her, citing issues with respect to her management and supervision of the facility. (Barax Dep. at 21-22; Def. 56.1 St. ¶ 97.) Plaintiff did not receive any formal performance evaluation from Barax (Barax Dep. at 30), and the parties dispute whether Plaintiff ever received any informal negative feedback during her employment.[2] During late November and December 2020, Barax, who had authority to hire and

---

[1]    Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St.," "Pl. 56.1 St.," or "Pl. 56.1 Counterstatement") incorporate by reference the parties' citations to the underlying evidentiary submissions.

[2]    Barax testified that he had several conversations with Plaintiff about her performance and lack of leadership in the building during November and December 2020. (Def. 56.1 St. ¶¶ 114-18.) Plaintiff's declaration asserts that she did not receive any criticism or negative feedback regarding her performance. (Docket entry no. 54 ("Darwin Decl.") ¶ 4.) Barax also testified that Plaintiff received positive feedback on her performance, and that she led Sapphire in passing three (3) infection control surveys by the New York

fire for the Administrator position, discussed with Moshe Kelman ("Kelman"), Sapphire's Chief Executive Officer, and Pepper, his desire and plans to terminate Plaintiff's employment. (Def. 56.1 St. ¶¶ 58-64.) Barax also spoke about Plaintiff's employment with Miriam Spiegel, Sapphire's Human Resources Manager (id.), and Jill Siano ("Siano"), Sapphire's former HR Director. (Barax Dep. at 16-18.)

On December 14, 2020, Barax emailed Bobby Thariath ("Thariath") after receiving Thariath's resume applying for Plaintiff's Administrator position. (Def. 56.1 St. ¶ 11.) Barax first interviewed Thariath in late December 2020 and interviewed him again on December 31, 2020, with Kelman. (Id. ¶¶ 15-17.) On January 4, 2021, Defendants provided an offer letter to Thariath for the Administrator position.[3] (Id. ¶ 18.) On January 5, 2021, Thariath signed the offer letter. (Id. ¶ 19.) Defendants initially planned that Plaintiff would remain in her position until February 28, 2021, in order to coordinate with Thariath's approximate start date of March 1. (Id. ¶¶ 27-28.)

On January 6, 2021, Plaintiff messaged Barax that she was feeling sick and left work early to go to the hospital. (Def. 56.1 St. ¶¶ 32-34.) On January 7, Plaintiff messaged Siano to say that she would be out sick for the rest of the week. (Id. ¶¶ 36-37.) On January 8, Plaintiff messaged Barax that she was unsure as to whether she could return to work on Monday and stated that further testing was needed. (Docket entry no. 54-1 (the "Barax-Darwin Messages") at 3.) Plaintiff messaged Barax updates regarding either her work or her health multiple times between January 8 and 30, 2021. (Id.) At some point during January 2021,

---

State Department of Health during the COVID-19 pandemic with findings of zero deficiencies. (See docket no. 55 ("Pl. 56.1 St.") ¶ 78.)

[3]     Plaintiff disputes the authenticity of the exemplars of the offer letter that Defendants have tendered in connection with this motion. The Court addresses the dispute below.

Plaintiff was diagnosed with ovarian cancer.  (Pl. 56.1 Counterstatement ¶ 6.)  On January 11, Plaintiff emailed her doctor's note directly to Barax and Siano.  (Def. 56.1 St. ¶ 41.)  The note stated that Plaintiff needed to be absent from work until she was cleared to return by her primary care provider or oncologist.  (Docket entry no. 50-20.)  On January 12, Siano emailed Plaintiff and Barax directly to let Plaintiff know that, as of January 1, 2021, Darwin had eight weeks[4] of paid time off ("PTO") to utilize.[5]  (Docket entry no. 50-21.)  On January 17, Plaintiff messaged Barax that she might be undergoing surgery the following week.  (Pl. 56.1 Counterstatement ¶ 12.)  Plaintiff also spoke on the phone with Barax on January 17 and 18 and, during those calls, told Barax that her surgery was scheduled for January 26, 2021.  (Pl. 56.1 Counterstatement ¶ 14.)

On January 26, Plaintiff underwent surgery related to her treatment for cancer. (Darwin Decl. ¶ 10.)  That same day, Barax mailed a letter to Plaintiff stating that Plaintiff had improperly been absent without notification or acceptable excuse since January 7, 2021, and that Sapphire had determined that she had "voluntarily resigned."  (Docket entry no. 50-22 (the "January Letter" or the "Termination Letter").)  The letter terminated Plaintiff's employment effective January 25, 2021 (id.) and left her without health insurance (Darwin Decl. ¶ 11). Plaintiff testified that she responded to the January Letter after she returned home from her surgery and that she experienced anxiety, to which the termination was a contributing factor, and

---

[4]     Beginning from the first day of Darwin's medical leave – January 6, 2021 – the eight-week PTO period would have ended on March 3, 2021.

[5]     Barax testified that he was unsure of the date he opened the January 11 and 12 emails, and, as of January 12, 2021, was unaware that Plaintiff was on an approved medical leave.  (Barax Dep. at 101-103.)  However, Barax also testified that he "usually" opens emails that are directly sent to him (id. at 100-101.), and Siano testified that Barax would typically open emails from her (docket entry no. 53-3 ("Siano Dep.") at 31-32).

that she was prescribed Xanax at some point after the termination.  (Pl. Dep. at 132, 135-37, 190-91.)

On February 9, Plaintiff sent a letter via email and certified mail to Barax and Kelman, stating that she had not resigned, was on leave, and had communicated with Barax before the surgery.  (Docket entry no. 50-23.)  She requested that Sapphire reinstate her position and backdate her insurance to January 26.  (Id.)  She further stated that she would still need time for chemotherapy and requested accommodations for her eventual return to work that, she stated, she would be "available to discuss in more detail at your convenience."  (Pl. 56.1 Counterstatement ¶ 29.)  Defendants did not respond to Plaintiff's email.  (Darwin Decl. ¶ 12; docket entry no. 54-3, at 3-4.)  On February 16, Plaintiff sent a second email and a letter by certified mail, reiterating her statements and requests, this time to the owners of Sapphire as well as Barax and Kelman.  (Pl. 56.1 Counterstatement ¶ 30.)

On March 1, 2021, Thariath began working for Sapphire in the capacity of Administrator, which had been Plaintiff's position.  (Def. 56.1 St. ¶ 55.)  On March 9, Barax sent a letter to Plaintiff stating that the January 26 letter had been sent due to an "administrative error," and that her correct termination date was March 3, 2021.[6]  (Pl. 56.1 St. ¶ 52; docket entry no. 50-24 (the "March Letter").)  In the March Letter, Barax stated that Plaintiff's medical

---

[6]    Barax asserted in the March Letter that, as a result of the administrative error, he had been unaware that Plaintiff was on a Human Resources-approved leave when he made his "voluntary resignation" determination.  He testified at his deposition that he was aware at the time of the January letter that Plaintiff had medical issues and expected to have surgery, but that he was unaware of any formal approval of leave.  (Barax Dep. at 103-108.)  Plaintiff disputes the allegation that the letter was sent due to an administrative error and contends that the termination of her employment and benefits was a discriminatory or retaliatory reaction to her disabling illness, and/or a failure to provide requested reasonable accommodations of paid leave and continued benefits. (Pl. 56.1 St. ¶ 52.)

benefits had been reinstated through March 3, 2021, and that she would receive the "balance of the paid leave due [to her] for the period February 7, 2021, through March 3, 2021." (Pl. 56.1 St. ¶ 57.) Plaintiff seems to acknowledge receipt of the balance of the paid leave. (Id.; Pl. Dep. at 124, 152-53.) Plaintiff never received a response from Defendants to her request to discuss further accommodations to facilitate her eventual return to work. (Pl. 56.1 St. ¶ 31.)

Plaintiff commenced this action on February 1, 2022. (Compl.) Defendants originally moved for summary judgment on December 2, 2022. (Docket entry no. 49.) On February 6, 2023, the case was reassigned to Judge Jennifer H. Rearden. Due to an evidentiary issue, on October 2, 2023, Judge Rearden ordered the parties to resubmit their briefs on the scope of the dispute. (Docket entry no. 71.) In fall 2023, the parties submitted their amended briefs, which are the operative briefs before this Court.[7] (Docket entry nos. 78 ("Def. Mem."); 80 ("Pl. Mem."); 82 ("Def. Reply").) On May 8, 2024, the case was reassigned to the undersigned.

<u>DISCUSSION</u>

Summary judgment is to be granted in favor of a moving party "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is considered material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one

---

[7]    In the second round of briefing, Defendants also submitted amended supporting documents including a new 56.1 Statement and an amended attorney declaration and associated exhibits. (Docket entry nos. 77, 79.) Given the limited scope of Judge Rearden's order – directing the parties <u>only</u> to resubmit their briefs – and Plaintiff's objections to the Defendants' additional proffers, the Court has considered only the 56.1 Statements, declarations and exhibits submitted in connection with the original motion for summary judgment.

where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts and they may not rely on conclusory allegations or unsubstantiated speculation." Caladora v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (citation omitted).  The nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (citation omitted).  However, in considering a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," Nieblas-Love v. N.Y.C. Hous. Auth., 165 F. Supp. 3d 51, 64 (S.D.N.Y. 2016) (citation omitted), and the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003) (citation and quotation marks omitted).  Where the party opposing summary judgment "fails to properly address [the moving] party's assertion of fact . . . the Court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

Evidentiary Dispute

In the first round of briefing, Plaintiff argued that certain key pieces of evidence pertaining to the timeline of Bobby Thariath's hiring,[8] which are integral to the Defense's

---

[8]    Due to ambiguities regarding the scope of the authentication dispute, Judge Rearden ordered both parties to re-brief their respective memoranda to "incorporate points and authority regarding the purported authentication issues" and to identify clearly the documents at issue.  (See docket entry no. 71 ("Judge Rearden Order") at 1.)  Plaintiff's second opposition submission identifies the specific evidence at issue as: (1) the draft and

position, are inadmissible because they were unauthenticated.  (Docket entry no. 56 ("Pl. First Mem.") at 12.)  In reply, Defendants submitted an affidavit from Bobby Thariath, who is no longer employed by Defendants, attesting, based on his personal knowledge, that the documents are authentic.  (See docket entry no. 57-5; docket entry no. 59 ("Defs. First Reply").)  In Plaintiff's amended brief, Plaintiff argues that these documents should still be precluded because they are unauthenticated, and further argues that they are unreliable as evidence of the timing of Sapphire's dealings with Thariath.

Authenticity is a fundamental prerequisite for the admissibility of evidence.  See United States v. Maldonado-Rivera, 922 F.2d 934, 957 (2d Cir. 1990).  This Court has held that, where a party wishes to have a court consider documents which are not yet part of the court's record, the documents must be attached to and authenticated by an appropriate affidavit, made by a competent witness through whom the documents could be received into evidence at trial.  New York ex rel. Spitzer v. Saint Francis Hosp., 94 F. Supp. 2d 423, 426 (S.D.N.Y. 2000); see also Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").  The threshold for authentication is "relatively low," requiring only "sufficient proof [such that] a reasonable juror could find in favor of authenticity or identification."  United States v. Vayner, 769 F.3d 125, 130 (2d Cir. 2014).  When authentication is challenged for the first time in opposition to a summary judgment motion, the moving party is

---

unexecuted versions of the Thariath offer letter dated January 4, 2021, (2) the executed version of the Thariath offer letter signed on January 5, 2021, and (3) Thariath's employment application, which also contains a copy of his signed offer letter.  (Docket entry no. 80 ("Pl. Second Mem.") at 16; see docket entry no. 50-11 ("Redacted Letter and Unsigned Letter") and docket entry no. 50-12 ("Signed Offer Letter") (together, (the "Offer Letters")); docket entry no. 50-14 ("Thariath Employment Application").)

permitted to respond to that argument in its reply, including through the proffer of additional witness affidavits.  Litton Ind., Inc. v. Lehman Bros. Kuhn Loeb Inc., 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991) ("Clearly, reply papers may properly address new material issues raised in opposition papers[.]").  Finally, "once an item of evidence is 'authenticated' as required under Rule 901, this 'merely renders evidence admissible . . . [and] the opposing party remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning.'"  United States v. Oreckinto, 234 F. Supp. 3d 360, 365 (D. Conn. 2017) (internal citation omitted).

Here, although Defendants did not originally include the affidavit of Bobby Thariath in their summary judgment papers, Defendants properly produced all three challenged Offer Letter documents to Plaintiff in discovery, which had presumptively authenticated each document.  See John Paul Mitchell Sys. v. Quality King Dist., Inc., 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000) (finding evidence admissible in part because "the act of production implicitly authenticated the documents" (citing United States v. Brown, 688 F.2d 1112, 1116 (7th Cir. 1982))).  Plaintiff then – for the first time – disputed the authenticity of the documents in her Opposition.  (Pl. First Mem. at 12.)  Defendants were permitted to respond to the newly raised authentication dispute in their reply briefing, including by providing the appropriate affidavit of a witness with personal knowledge.  Litton Ind., 767 F. Supp. at 1235.  Plaintiff has provided no argument or basis from which this Court can conclude that the affidavit of Thariath, as someone with personal knowledge of all challenged documents, was insufficient to authenticate the challenged evidence.[9]  (See generally Pl. Mem.; see also Fed. R. Evid. 901.)  Therefore, the

---

[9]    Plaintiff also seems to argue that the Court should refuse to consider Thariath's entire affidavit because it included a document – the email in which Barax sent Thariath the Offer Letter (docket entry no. 57-5 at Ex. 3) – which was requested from Defendants but

Court finds the evidence sufficiently authenticated by the Thariath affidavit and denies Plaintiff's motion to preclude the evidence on that basis.

Plaintiff also purports to challenge the reliability of the Offer Letters on two grounds. First, Plaintiff asserts that the "inconsistent metadata" from one version of the draft letter shows that it was not sent to Thariath on January 4, 2021. (Docket entry no. 53-5 (the "Metadata Exhibit").) Plaintiff only provides the metadata of one version of the document – the unexecuted draft – which states that the document was "created" and "last modified" around the time it was produced in discovery (July 2022) and "last printed" in September 2020. (Id.) Plaintiff does not offer any further analysis of this data, nor does she offer expert testimony on this point. Ambiguous metadata from one unexecuted version of the offer letter is insufficient to establish a genuine dispute regarding the reliability of the executed version of the offer letter, which has been authenticated by Thariath and is the material piece of evidence for many of the relevant claims.

Next, Plaintiff asserts that Barax's testimony that he did not recall emailing Thariath the Offer Letter himself shows that the Offer Letter is unreliable. (See Barax Dep. at 141:16-21 ("But I mean it – it [the Offer Letter] could – Jill [Siano] could have given it to me, and I could have sent it. I – I don't – I'm not – I don't remember.").) Barax's inability to recall precisely who emailed the Offer Letter to Thariath is not sufficient to establish a genuine dispute

---

was not produced to Plaintiff in discovery. (Pl. Mem. at 15.) In reply, Defendants assert that they were not in possession of the document during discovery. (Def. Reply. at 8-9.) Preclusion is an available remedy for a party's failure to comply with discovery requests. See Fed. R. Civ. P. 37. However, Plaintiff identifies no legal basis for precluding the entire Thariath affidavit simply because one attached exhibit allegedly had not been produced, nor does it appear that the document was in Defendants' possession at the time of Plaintiff's request. Plaintiff's application for preclusion of the Thariath affidavit and its exhibits is therefore denied.

as to the Letter's reliability, particularly given that Thariath – not Barax – is the affiant attesting to the document's authenticity.  Furthermore, Barax's testimony does not contradict any information in the Signed Offer Letter and thus raises no genuine dispute as to that Letter's reliability.

For these reasons, the Court finds that the Signed Offer Letter can properly be considered in connection with this summary judgment motion practice.  The Court next turns to its analysis of the parties' arguments concerning the merits of Plaintiff's claims.

Employment Discrimination

In Counts One through Nine, Plaintiff asserts three related employment discrimination claims under the ADA and state and local laws, asserting claims for disability discrimination, retaliation, and failure to accommodate.[10]  For the following reasons, the Court grants Defendants' motion for summary judgment dismissing all of Plaintiff's employment discrimination claims premised on the termination of her employment as of March 3, 2021.  The Court also grants the motion with respect to Plaintiff's federal retaliation claims, but denies the motion as to Plaintiff's discrimination, state and local retaliation, and failure to accommodate claims premised on the January 25, 2021 termination notice.

---

[10]    Plaintiff asserts her federal claims against only Defendant Sapphire, and her state and local employment claims against Sapphire and Barax, in his individual capacity.  The Court notes that the proper vehicle for individual liability under the NYSHRL and NYCHRL is through a separate claim for aiding and abetting, as asserted in Count Ten. Therefore, the Court considers Counts Four through Nine as asserted against Sapphire and considers separately Barax's aiding and abetting liability for each claim, as asserted in Count Ten.  See Storr v. Anderson Sch., 919 F. Supp. 144, 149 (S.D.N.Y. 1996).

<u>The March Termination</u>

Plaintiff asserts that Sapphire discriminated against her on the basis of her disability, because she was fired after she was diagnosed with ovarian cancer. (<u>See generally</u> Pl. Mem.) She further asserts that Sapphire retaliated against her by firing her after she requested a medical accommodation (her medical leave). (<u>Id.</u> at 10-11.) While the legal standards under federal, state, and local law for claims asserting disability discrimination[11] and retaliation[12] differ slightly, all six of Plaintiff's discrimination claims require – at a minimum – a causal connection between Plaintiff's negative treatment and either her disability or her protected requests for accommodation of the disability. Here, the evidentiary record frames no genuine factual dispute as to whether, as Defendants assert, their decision to terminate Plaintiff's employment predated her illness and her requests for medical accommodation.

It is undisputed that Plaintiff first reported that she felt ill on January 6, 2021, and had presented no indication that she was a person with a disability before that time. (Darwin Decl. ¶ 6.) The record also establishes that Defendants began seeking to replace Plaintiff as Administrator sometime in December 2020 and that Bobby Thariath accepted an employment

---

[11]    For Plaintiff to prevail on her disability discrimination claim under the NYCHRL and the recently-amended NYSHRL, Plaintiff need show only that she was treated "less well" because of her disability. <u>Baptiste v. City Univ. of N.Y.</u>, 680 F. Supp. 3d 415, 422 (S.D.N.Y. 2023); <u>see also</u> n. 13, <u>infra</u>. Her claim under the ADA is evaluated under the more demanding <u>McDonnell-Douglas</u> burden-shifting standard. <u>Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Prog., Inc.</u>, 198 F.3d 68, 72 (2d Cir. 1999).

[12]    Federal retaliation claims are also subject to the <u>McDonnell Douglas</u> standard. <u>Id.</u> For retaliation claims brought under the current versions of the NYSHRL and NYCRHL, a plaintiff need only allege that she engaged in a protected activity and that, as a result, "the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." <u>Ward v. Cohen Media Pubs. LLC</u>, No. 22-CV-06431-JLR, 2023 WL 5353342, at *13 (S.D.N.Y. Aug. 21, 2023) (citation omitted).

offer for Plaintiff's position on January 5, 2021.  (<u>See</u> docket entry no. 57-5 ("Thariath Aff.").) Barax's uncontroverted testimony establishes that, by January 5, 2021, Defendants intended to terminate Plaintiff's employment sometime in late February 2021 in preparation for Thariath's anticipated start in March 2021.  (Barax Dep. 26:23-28:1.)  Thariath's declaration confirms that he had received and countersigned a letter offering him the position by January 5, 2025, the day before Plaintiff informed Defendants that she was ill.  Therefore, the decision to terminate Plaintiff's employment could not have been motivated by Plaintiff's then-unknown illness or her requests for medical accommodation.  Defendants are therefore entitled as a matter of law to summary judgment dismissing all six discrimination claims that are based on Defendants' January 2021 decision to terminate Plaintiff's employment in March 2021, because Plaintiff has not framed a genuine dispute of fact as to whether that termination was causally connected to any protected characteristic or activity.  <u>See</u> <u>Kolivas v. Credit Agricole</u>, 125 F.3d 844, 844 (2d Cir. 1997) (Table) (finding no causal connection for a disability discrimination claim where decision to terminate was made before employee was diagnosed with a disability, even though plaintiff was informed of his termination after diagnosis); <u>Piligian v. Icahn Sch. of Med. at Mount Sinai</u>, 490 F. Supp. 3d 707, 722 (S.D.N.Y. 2020) ("It is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity." (internal citation omitted)).

<u>The January 26th Termination Letter</u>

Plaintiff claims that Defendants' decision, communicated in the January 26, 2021 termination letter, to terminate her employment and benefits as of January 25, 2021, rather than as of a later date, was the product of discriminatory animus and/or retaliation for her requests for

accommodation. (Pl. Mem. at 10-11.) An employer's decision to accelerate the date of an employee's termination may support a discrimination or retaliation claim even where the initial decision to terminate was non-discriminatory, depending on the facts of the case. See Silver v. N. Shore Univ. Hosp., 490 F. Supp. 2d 354, 368 (S.D.N.Y. 2007). The pertinent question in this regard here is whether the January 26 Letter – purporting to terminate Plaintiff's employment with Sapphire and end her pay and benefits immediately – constituted a discriminatory or retaliatory "accelerated termination" that is actionable notwithstanding the March 9, 2021 Letter, which retroactively reinstated Plaintiff's employment and benefits.

Remaining Federal Discrimination Claim

Disability discrimination claims under the ADA are subject to the McDonnell Douglas burden-shifting analytical framework, which requires a showing that Plaintiff suffered an adverse employment action because of her disability. Heyman, 198 F.3d at 72. In its recent decision in Muldrow v. City of St. Louis, the Supreme Court held that a plaintiff only needs to show "some harm" with respect to an "identifiable term or condition of employment" to establish an adverse employment action with respect to a claim of discrimination based on a protected characteristic. 601 U.S. 346, 354-55 (2024); see also Mitchell v. Planned Parenthood of Greater N.Y., Inc., No. 23-CV-1932-JLR, 2024 WL 3849192 (S.D.N.Y. Aug. 16, 2024) (finding that Muldrow applies to discrimination claims under the ADA "given that the pertinent language in [that statute] is similar to the pertinent language in Title VII." (collecting cases)). The Plaintiff "does not have to show . . . that the harm incurred was 'significant', [o]r serious, or substantial." Muldrow, 601 U.S. at 355.

As discussed above, the uncontroverted record establishes that Defendants had planned, before Plaintiff's illness-related absence commenced, to terminate Plaintiff's

employment at the end of February, when Thariath was free to begin in the Administrator position.  (Barax Dep. 26:23-28:1.)  Plaintiff has proffered testimony and email messages to Barax, which shows that she informed Barax of her medical condition and requested accommodations before the January Letter was issued.  Although Barax denies knowing that Darwin's medical leave had been approved before he sent the January Letter, he admits that he had previously been informed of Plaintiff's illness and anticipated surgery, and that she had communicated with him after January 7, 2021.  (Barax Dep. at 41-42.)  Therefore, Plaintiff has established a factual record from which a jury could conclude that the January Letter, which announced the termination of Plaintiff's employment and benefits as of January 25, 2021, was prompted by her disclosure of her disability and request for medical accommodation.

Had the Defendants taken no action to rectify the January Letter, Darwin's case for an actionable accelerated termination would be much more straightforward.  But the record before the Court is not clear as to whether, on the facts of this case, plaintiff actually suffered harm sufficient to support a federal discrimination claim.  The March Letter reinstated Darwin's pay and health benefits through March 3, 2021.  Darwin has admitted that she received a lump-sum compensation payment and has provided no evidence that the lump-sum payment and benefit reinstatement were insufficient to cover the additional weeks for which she was entitled to pay and benefits.  (See Def 56.1 ¶ 57; Pl. Counter 56.1 ¶ 57; Pl. Dep. at 124, 152-53.)  Aside from the mention in her deposition of a Xanax prescription and a general statement that she suffered anxiety (which her termination played some part in causing) and had "discussed" the termination while she was undergoing cancer surgery with her doctor "at least to some extent," Plaintiff has proffered no evidence of financial injury or any other harm arising from the subsequently corrected January termination notice.  (See Pl. Dep. at 189-190.)

In somewhat analogous accelerated termination cases, courts found no adverse employment action where plaintiffs still received the pay and benefits owed to them through their proper termination date.  See Dollman v. Mast Ind., Inc., 731 F. Supp. 2d 328, 340 (S.D.N.Y. 2010); Wanamaker v. Columbian Rope Co., 907 F. Supp. 522, 535-36 (N.D.N.Y. 1995) aff'd 108 F.3d 462 (2d Cir. 1997); Connell v. Bank of Boston, 924 F.2d 1169, 1179 (1st Cir. 1991) cert. denied 501 U.S. 1218 (1991).  The analysis in Wanamaker is particularly informative.  There, the Court reasoned that, because plaintiff still received the same financial benefit otherwise promised, his accelerated termination was akin to an employment transfer.  907 F. Supp. at 536-37.  Essentially, the plaintiff was not left "worse off" because he received the same financial benefit while performing no work.  Id.  Following Muldrow, however, employment transfers to less prestigious or commodious positions, even if employee compensation remains the same, may constitute adverse employment actions.  This is obviously true for most accelerated terminations because, in a typical case, employees told to stop reporting to work lose the ability to utilize office space and support services, have fewer opportunities to network, and have less prestigious (meaning, no) work assignments, all of which the Muldrow Court found to be cognizable harms to an identifiable term of employment.  601 U.S. at 359.  The record here, however, shows that Darwin suffered no such harmful consequences.  She would not have been ready and able to work, or even to be in the office, during the period between January 26 and March 3, 2021, and, as noted above, Darwin has identified no financial harm relating to the termination and reinstatement of her compensation and benefits.

Finally, Darwin did testify that, sometime after she was notified of her termination, she suffered anxiety, due in part to the termination of her employment, for which she was prescribed Xanax.  She answered, "Yeah" when her lawyer queried whether "that

prescription [was] meant to treat emotional distress related to Sapphire's termination of you while you were undergoing surgery related to your cancer," and again answered, "Yeah" when asked by her lawyer whether she had "discussed those issues with [the prescribing primary care physician] at least to some extent." (Pl. Dep. at 190-91.)

Even under the generous standard enunciated in <u>Muldrow</u>, the current record appears insufficient to frame a triable issue of fact as to whether Plaintiff suffered at least "some harm" traceable to the allegedly discriminatory accelerated termination notice. <u>Muldrow</u> was, however, decided after the instant Motion had been fully briefed, and the Court will therefore give the parties an opportunity to brief this issue before resolving the question of whether there is a triable discrimination issue arising from the acceleration of termination.

<u>Remaining NYSHRL and NCYHRL Discrimination Claims</u>

To prevail on her disability discrimination claim under the NYCHRL, Plaintiff need only show that she was "subject to an unfavorable employment change or treated less well than other employees on the basis of [her disability]." <u>Baptiste</u>, 680 F. Supp. 3d at 422. The New York City Council has emphasized that "interpretations of state and federal civil rights statutes can serve only as a floor below which the [NYCHRL] cannot fall'" and the Second Circuit has instructed that, in light of recent revision to the New York City statute, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing [its] provisions 'broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible.'" <u>Ya-Chen Chen v. City Univ. of N.Y.</u>, 805 F.3d 59, 75 (2d Cir. 2015) (citations omitted). Therefore, despite the now more forgiving standard applicable for

federal employment discrimination claims under <u>Muldrow</u>, if Darwin has a triable discrimination claim under the ADA, she necessarily has a triable claim under the NYCHRL.

The current standard under NYSHRL is intended to "come closer" to the standard of the NYCHRL, though the extent to which the two are now intended to be "co-extensive" is unclear.[13]  Given that the 2019 amendment to the NYSHRL was intended to "relax a plaintiff's burden," and that courts are instructed to "construe provisions liberally to accomplish the remedial purposes of the NYSHRL," <u>Shaughnessy</u>, 2024 WL 1350083, at *10, the Court finds that, if Plaintiff has a triable federal claim under <u>Muldrow</u>, she also has a triable claim under the NYSHRL.

Therefore, the Court holds in abeyance its decision regarding Defendants' motion for summary judgment insofar as it seeks the dismissal of Plaintiff's NYSHRL and NYCHRL discrimination claims, pending supplemental briefing as to whether, on the current record, Plaintiff has proffered evidence sufficient to create a genuine dispute regarding whether she suffered an unfavorable employment change arising from the accelerated termination.

<u>Remaining Federal Retaliation Claim</u>

A retaliation claim under the ADA is also subject to the <u>McDonnell Douglas</u> burden-shifting standard and requires a showing that a plaintiff suffered an adverse employment action at least in part because plaintiff engaged in some protected action.  <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002).  Despite the lower standard now applicable for

---

[13]    "Though the post-amendment standard under the NYSHRL comes closer to the standard of the NYCHRL, it remains unclear whether the two standards were intended to be co-extensive or whether a plaintiff's burden under the NYSHRL resides somewhere between his burdens under [federal law] and the NYCHRL."  <u>Shaughnessy v. Scotiabank</u>, No. 22-CV-10870-LAP, 2024 WL 1350083, at *11 (S.D.N.Y. Mar. 29, 2024).  If Plaintiff's claims fail under the more liberal NYCHRL, they necessarily fail under the NYSHRL.

showing an "adverse employment action" for employment discrimination claims, in the context of retaliation claims, the Muldrow Court explicitly upheld the requirement that such "retaliatory action" must be "'materially adverse,' meaning that it causes 'significant harm.'"  Muldrow, 601 U.S. at 357.  The Court explained that the anti-retaliation provisions are "meant to capture those (and only those) employer actions serious enough to 'dissuade a reasonable worker from making or supporting a [protected activity].'"  Id. (quoting Burlington N. & Santa Fe Railway Co. v. White, 548 U.S. 53, 67 (2006)).

As discussed above, Darwin has not proffered evidence of harm traceable to the accelerated termination in the January Letter, apart from fleeting references to anxiety during the course of her cancer treatment.  (Pl. Dep. at 190-191.)  The Court finds that such cursory and vague references to "harm" are insufficient to satisfy the Burlington Northern standard.  Given that no intervening change in law has affected this standard since the parties' initial briefing, and that Plaintiff has failed to meet her burden to show sufficient evidence of injury constituting "significant harm," the Court finds that Defendants are entitled as a matter of law to summary judgment dismissing Plaintiff's federal retaliation claim premised on the January 26, 2021 letter.

Remaining NYSHRL and NYCHRL Retaliation Claims

For her retaliation claims under both the NYSHRL and NYCHRL, Plaintiff must show that, after she engaged in a protected activity, Defendants engaged in retaliatory conduct "reasonably likely to deter a person from engaging in that activity."  Ward, 2023 WL 5353342, at *13; see also Shaughnessy, 2024 WL 1350083, at *11 ("The post-amendment NYSHRL removes a plaintiff's burden to allege that he suffered an adverse employment action.").  This standard is more permissive than the federal standard, which requires some "material adversity" or "significant" harm.  Burlington, 548 U.S. at 67-68; see also Muldrow, 601 U.S. at 357

(affirming the applicability of the significant-harm standard for federal retaliation claims established by the Court in <u>White</u> because that standard was "adopted for reasons peculiar to the retaliation context"); <u>see</u> <u>also</u> <u>McHenry v. Fox News Network, LLC</u>, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020) ("Retaliation claims under the NYCHRL are subject to a broader standard than under [federal law]."); <u>Schanfield v. Sojitz Corp. of Am.</u>, 663 F. Supp. 2d 305, 343 (S.D.N.Y. 2009) ("The standard for retaliation claims under the NYCHRL differs slightly from the [federal] standard in that there is no requirement . . . that the employees suffer a <u>materially</u> adverse action . . . the NYCHRL makes clear that it is illegal for an employer to retaliate in 'any manner.'" (emphasis in original)); <u>Arazi v. Cohen Bros.. Realty Corp.</u>, No. 20-CV- 8837-GHW, 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) (noting the "NYCHRL's more liberal . . . standard applies" to NYSHRL retaliation claims following the 2019 statutory amendments).

   Under New York state and local law, there is no doubt that Darwin's request for medical leave is a request for "reasonable accommodation" and, therefore, a protected activity. <u>Piligian</u>, 490 F. Supp. 3d at 722 (for NYCHRL); <u>see</u> <u>also</u> <u>Tafolla v. Heilig</u>, 80 F.4th 111, 126 (2d Cir. 2023) (same for NYSHRL).  Next, the temporal proximity between the protected activity and the January Letter, and Barax's assertion that the decision to terminate Plaintiff's employment in January was prompted by what he claims to have believed was an unsanctioned absence, although he was aware that Plaintiff was undergoing medical diagnostic procedures and anticipating surgery, create a genuine dispute as to whether retaliatory animus was a "but for" cause of the decision to send the January Letter.  <u>Shaughnessy</u>, 2024 WL 1350083, at *11 ("[C]ausation under the NYSHRL requires a plaintiff to allege that the "retaliation was a but-for cause of the employer's adverse action."); <u>Dodd v. City Univ. of N.Y.</u>, 489 F. Supp. 3d 219, 268-69 (S.D.N.Y. 2020) ("[T]he NYCHRL does not require a plaintiff to show but-for causation.

Instead, 'summary judgment is appropriate only if the plaintiff cannot show that retaliation played any part in the employer's decision.'" (citation omitted)).

The question in connection with the third element of Plaintiff's state and local law retaliation claims is whether a reasonable jury could find that, by sending the January Letter, Defendants engaged in conduct "reasonably likely to deter a person" in Plaintiff's position from requesting medical accommodation. As discussed above, the Court will allow supplemental briefing regarding whether the record establishes a triable issue of fact regarding the harm resulting from the January Letter for federal law purposes. The Court will therefore hold in abeyance Defendants' motion for summary judgment with respect to the state and local law retaliation claims pending consideration of the supplemental submissions.

Failure to Accommodate

To establish a viable claim for failure to accommodate, a plaintiff must show "that: (1) plaintiff is a person with a disability under the meaning of [the relevant statute]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Nieblas-Love v. New York City Hous. Auth., 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016).[14] Darwin asserts that Sapphire failed to provide reasonable accommodation by (1) firing her while she was on medical leave and (2) refusing to discuss further accommodations to enable her to return to work following her eight-week medical leave.

---

[14]     The NYCHRL and (and the current version of the NYSHRL) involve the same elements but utilize a broader definition of appropriate accommodation than that required under the ADA, including "such accommodation that can be made that shall not cause undue hardship in the conduct of the [employer's] business." Berger v. N.Y.C. Police Dep't, 304 F. Supp. 3d 360, 372 (S.D.N.Y. 2018) (emphasis in original); Fernandez v. Windmill Dist. Co., 159 F. Supp. 3d 351, 366 (S.D.N.Y. 2016).

(Pl. Mem. at 19-21.)  Darwin has argued that, with reasonable accommodation, she would have been able to return to the workplace sometime in March 2021, after her eight-week leave ended. (Id. at 20; Pl. Dep. at 130:9-12.)  As discussed above, however, the record, even when viewed in the light most favorable to Plaintiff, shows that Sapphire's decision to terminate Darwin as of early March 2021 was made before she became ill.  Therefore, Sapphire cannot be found liable for failing to accommodate Darwin by declining to extend her employment.  See Vargas v. St. Luke's-Roosevelt Hosp. Ctr., No. 16-CV-5733-JPO, 2020 WL 2836824, at *7 (S.D.N.Y. June 1, 2020) ("Because the decision to terminate Vargas was made before Defendants were aware of his appendectomy, the evidence fails to support a causal relationship necessary to prevail on either a failure to accommodate or discrimination claim under the ADA."); Gronne v. Apple Bank For Sav., 1 F. App'x 64, 66 (2d Cir. 2001) ("To recover on an accommodation claim, a plaintiff must show that . . . the employer had notice of her disability.").  Defendants are therefore entitled to summary judgment with respect to Plaintiff's failure to accommodate claims arising from her March 2021 termination.

However, as noted above, a reasonable jury could find that the issuance of the January Letter violated Sapphire's obligation to provide reasonable accommodation to Darwin during her eight-week medical leave.  A request for medical leave following major surgery, "even an extended leave, can be a reasonable accommodation."  Cayetano v. Fed. Express Corp., No. 19-CV-10619-AT, 2022 WL 2467735, at *6 (S.D.N.Y. July 6, 2022).  Sapphire does not argue that it failed to accommodate Darwin's requested medical leave because the accommodation was unreasonable, but rather seems to argue that it in fact granted the request by virtue of the March Letter retroactively reinstating Darwin's pay and benefits until the end of her leave.  As discussed above, the current record seems, in light of the March reinstatement, to

proffer insufficient evidence to support a reasonable jury finding that the January Letter affected

the terms of Darwin's employment negatively.  But see Valentine v. Brain & Spine Surgeons of

N.Y., P.C., No. 17-CV-2275-NSR, 2018 WL 1871175, at *14 (S.D.N.Y. Apr. 16, 2018)

("Terminating an employee soon after a request for an accommodation could certainly amount to

a denial of that request.").  Because the Court is granting Plaintiff an additional opportunity to

brief any harm resulting from the January Letter, the Court will hold in abeyance this element of

Defendants' motion pending consideration of the additional briefing.


Intentional Infliction of Emotional Distress

             Plaintiff asserts a claim for intentional infliction of emotional distress ("IIED")

based on the Defendants' conduct surrounding her medical absence and termination.  To sustain

a claim for intentional infliction of emotional distress under New York law, a plaintiff must

establish: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3)

a causal connection between the conduct and the injury, and (4) severe emotional distress."

Roelcke v. Zip Aviation, LLC, 571 F. Supp. 3d 214, 235 (S.D.N.Y. 2021) (citation omitted).  As

to the first element, the Plaintiff must show that the defendant's conduct was "so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency."  Id.

(citation omitted).  In the employment discrimination context, New York courts are "particularly

reluctant to find that such conduct is sufficiently extreme or outrageous to satisfy this demanding

standard 'absent a deliberate and malicious campaign against the Plaintiff.'"  Cowan v. City of

<u>Mount Vernon</u>, 95 F. Supp. 3d 624, 657 (S.D.N.Y. 2015) (quoting <u>Fertig v. HRA Med.</u>

<u>Assistance Program</u>, No. 10-CV-8191-RPP, 2011 WL 1795235, at *6 (S.D.N.Y. May 6, 2011)).

Plaintiff has not provided sufficient evidence to enable a reasonable jury to find

that the Defendants engaged in conduct that satisfies the high standard of extreme or outrageous

conduct.  Plaintiff alleges that the Defendants behaved unacceptably by targeting her with the

January 26 termination letter, which she asserts was deliberately sent on the day of her surgery.

(Pl. Mem. at 23.)  Mere bad behavior, however, is not sufficient to establish an IIED claim.  The

record, read in the light most favorable to Darwin, is insufficient to support a finding of IIED.

At worst, Defendants deliberately sent a single letter terminating Plaintiff's employment when

she was undergoing surgery for a serious medical problem, and then ignored her communications

about the termination for four weeks.  Within a month of her first inquiry, however, they

attempted to rectify their conduct through reinstatement of Plaintiff's benefits and pay, as

announced in the March 9, 2021 Letter.  The January Letter and the belated response to Darwin's

subsequent complaints do not, by themselves, show a "deliberate and malicious campaign

against" Darwin.  <u>See</u> <u>Cowan</u>, 95 F. Supp. 3d at 657.  The Court concludes that there is no triable

issue of fact as to whether the January 26 letter constituted behavior "utterly intolerable in

civilized community."  <u>Howell v. N.Y. Post Co.</u>, 81 N.Y.2d 115, 122 (1993).

Defendants' motion for summary judgment dismissing Plaintiff's IIED claim is

granted.


<u>NYSHRL and NYCHRL Aiding and Abetting</u>

Finally, Darwin asserts claims against Defendant Barax for aiding and abetting

Sapphire's primary violations of the NYCHRL and NYSHRL discussed above.  To prevail on a

claim of aiding and abetting conduct in violation of the NYCHRL and the NYSHRL, Plaintiff must show that Barax "actually participated in the [impermissible] conduct." <u>Ananiadis v. Mediterranean Gyros Prods., Inc.</u>, 151 A.D.3d 915, 917 (N.Y. App. Div., 2d Dep't 2017). Where there is no primary violation, "there can be no liability for aiding and abetting." <u>White v. Pacifica Found.</u>, 973 F. Supp. 2d 363, 378 (S.D.N.Y. 2013). This analysis is the same under both the NYCHRL and the NYSHRL. <u>Feingold v. New York</u>, 366 F.3d 138, 158 (2d Cir. 2004).

The Court has granted Defendants summary judgment dismissing all of Plaintiff's discrimination, retaliation, and failure to accommodate claims premised on the termination of her employment as of early March 2021. The related aiding and abetting claims are, accordingly, dismissed as well.

At this stage, the only primary violations that may survive summary judgment are Darwin's claims for discrimination, retaliation, and failure to accommodate premised on the purported termination of Darwin's employment on benefits from January 25, 2021 to March 3, 2021. Those claims are based on Barax's own conduct and can support an aiding and abetting claim to the extent the underlying primarily claims are themselves viable. (<u>See</u> January Letter; Barax-Darwin Messages; docket entry no. 50-20.) Therefore, the Court holds in abeyance its decision on Defendants' motion for summary judgment with respect to Darwin's claims asserting that Barax aided and abetted the conduct underlying Plaintiff's failure to accommodate, retaliation, and discrimination claims under the NYSHRL and NYCHRL, pending the parties' further briefing on the issue of harm caused by the January Letter.

O<small>RDER FOR</small> S<small>UPPLEMENTAL</small> B<small>RIEFING</small>

As discussed above, from the current record it appears that Plaintiff has proffered insufficient evidence to frame a triable issue of fact as to whether she suffered at least "some harm" traceable to the allegedly discriminatory January termination notice.  However, this Motion was briefed prior to the Supreme Court's April 17, 2024, decision in <u>Muldrow v. City of St. Louis</u>, which overturned the Second Circuit's precedent requiring a "material" or "significant" change in employment conditions to sustain an employment discrimination claim. The Court will therefore grant the parties an opportunity to brief this issue before resolving the question of whether there is a triable issue arising from Plaintiff's accelerated termination so as to preclude summary judgment dismissing Plaintiff's ADA, NYCHRL, and NYSHRL discrimination claims, her city and state retaliation claims, and her failure to accommodate claims premised on Sapphire's apparent refusal in the January Letter to provide the 8-week medical leave, and any related aiding and abetting claims against Barax.

The parties are hereby instructed to submit supplemental briefing addressing whether, **on the current factual record**, Plaintiff has proffered sufficient evidence to establish a genuine issue of fact regarding whether she suffered "some injury respecting her employment terms or conditions," within the meaning of <u>Muldrow</u>, due to the January Letter's accelerated termination and in light of the Court's dismissal of Plaintiff's claims asserting that the termination of her employment as of early March 2021 violated her rights.  Any such briefs must comply with all applicable federal and local rules as well as the following instructions: Plaintiff's supplemental brief is due by **January 22, 2025.**  Defendants' reply brief due by **January 29, 2025**.  Each brief is to **be no longer than 1,750 words** and must rely solely on the factual record

already properly submitted to and considered by the Court in connection with this Motion.  Any non-compliant submissions will be stricken from the record.  Should either party fail to submit a supplemental brief by the dates set forth above, the remaining issues in this case will be decided on the available record and without further advance notice.

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted with respect to Plaintiff's intentional infliction of emotional distress claim and all claims premised on the termination of Plaintiff's employment and related benefits as of early March 2021.  The motion is further granted with respect to the entirety of Plaintiff's federal retaliation claim.  The Court holds in abeyance a final decision on the motion with respect to Plaintiff's remaining claims against Sapphire for failure to accommodate (under federal, state, and local law), discrimination (under federal, state, and local law), and retaliation (under state and local law) premised on the accelerated termination period from January 25, 2021 to March 3, 2021. The Court also holds in abeyance a decision regarding Plaintiff's aiding and abetting claims asserted against Defendant Barax premised on the surviving state and local claims asserting primary violations for failure to accommodate, discrimination, and retaliation due to the January 25, 2021 cancellation of benefits.

Plaintiff must submit her supplemental brief of **no more than 1,750 words** addressing the issues indicated above, **by January 22, 2025.**  Defendants' reply brief is due by **January 29, 2025.**

SO ORDERED.

Dated: New York, New York
      January 15, 2025

                /s/ Laura Taylor Swain
                LAURA TAYLOR SWAIN
                Chief United States District Judge